UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

RAYCO TRAYLOR,

   Plaintiff,

v.

GARY, JOHN DOE, JANE DOE,
MICHAEL WARNER, DENISE C.
KEARNS, MN DEPT OF
CORRECTIONS, BILL BOLIN,
CASALENDA, DAN MOE, HENNEN,
HAMMER, and JAMISON DOEDEN,[1]

   Respondents.

Case No. 24-cv-3758 (LMP/JFD)

**ORDER**

This matter comes before the Court on Plaintiff Rayco Traylor's objection to the Report and Recommendation ("R&R") of United States Magistrate Judge John F. Docherty, which recommends dismissing Traylor's complaint. *See generally* ECF No. 4. For the following reasons, the Court vacates Magistrate Judge Docherty's Report and Recommendation, but nevertheless dismisses Traylor's complaint.

---

[1] The Complaint names the Minnesota Department of Corrections ("MNDOC") and numerous MCF-Stillwater employees as defendants. These defendants include "Gary" and "Hammer," identified as correctional sergeants; Michael Warner and "Casalenda," identified as lieutenants; Denise Kearns, MCF-Stillwater's "Grievance Coordinator"; Bill Bolin, MCF-Stillwater's warden; Dan Moe, an "AWO"; and "Hennen," an "AWA – Sgt." *See, e.g.*, ECF No. 1 at 2. The Complaint also names Jamison Doeden, an "Assistant Commissioner," presumably with MNDOC. *Id.*

## BACKGROUND

On September 27, 2024, Traylor filed a complaint alleging a violation of his civil rights under 42 U.S.C. § 1983, ECF No. 1, and an application to proceed in this action without prepaying fees or costs, ECF No. 2 ("IFP Application").

Traylor generally alleges that he, a prisoner at MCF-Stillwater, has faced difficulties in filing grievances. ECF No. 1 at 2–4. He alleges, for instance, that in August 2024, he was placed on "grievance management" after submitting more than four grievances in a month and fourteen grievances in total. *See id.* at 2. He argues these restrictions violate his First Amendment right "to file as many grievances concerning my issues as necessary to address concerns," including inadequate meals, religion-related diet issues, delayed medication distribution, frequent and harassing strip searches, improper segregation practices, and other conditions affecting inmate welfare. *See id.* at 2, 5.

Traylor also alleges that prison staff retaliated against him for his repeated grievance filings. *See id.* at 3. The account here is unclear, but Traylor seems to contend that at least two disciplinary hearings occurred and ended unfavorably. *See id.* He also asserts that prison staff timed a disciplinary report's issuance to maximize his time in segregated custody. *See id.* Traylor suggests that these hearings—and the alleged procedural improprieties—were aimed at discouraging him from exercising his First Amendment right to seek redress for legitimate concerns. *See id.* at 3–4. Traylor seeks injunctive relief to "allow[] [him] to file grievances concerning issues immediately" and to "chang[e] the restrictions on filing certain amounts of grievances." *Id.* at 5. He also seeks compensatory and punitive damages. *See id.* at 5–6.

Traylor also filed an application to proceed *in forma pauperis* ("IFP"), under 28 U.S.C. § 1915, which allows a prisoner to file a civil action without prepaying ordinary fees imposed by the Court. But "prisoners who are granted IFP status are not excused from paying the . . . filing fee altogether." *Ingram v. Booth*, No. 23-cv-699 (KMM/JFD), 2024 WL 4697523, at *1 (D. Minn. Oct. 15, 2024). Instead, under Section 1915(b)(1), prisoners are required to pay an initial filing fee "when funds exist," in the amount of "20 percent of the greater of (A) the average monthly deposits to the prisoner's account; or (B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing." In this case, the Court ordered Traylor to pay an initial filing fee of $9.71. ECF No. 3. Traylor did not pay the filing fee, and on November 7, 2024, Magistrate Judge Docherty issued an R&R recommending the dismissal of Traylor's complaint for failure to prosecute. ECF No. 4. Traylor objected, asserting that he is unable to pay the fee. ECF No. 5.

## ANALYSIS

### I.     The Court Vacates the R&R

Under 28 U.S.C. § 1915(b)(4), prisoners who apply for IFP status may be permitted to bring actions without paying an initial fee if they have "no assets and no means" to pay. *Hamre v. Melton*, No. 19-cv-2641 (WMW/LIB), 2020 WL 2992427, at *2 (D. Minn. June 4, 2020) ("The plain language of this statute, while requiring a district court to assess an initial partial filing fee, prohibits a district court from dismissing an IFP prisoner's case when the failure to pay is due to the lack of funds available."). The Court will, for now, accept Traylor's representations that he has no funds, and will vacate the R&R's

3

recommendation to dismiss his complaint because he did not pay the filing fee. *See id.* (holding the same).

## II.   Review of Arguments Raised in Complaint

Nevertheless, under 28 U.S.C. § 1915(e)(2)(B), this Court reviews Traylor's complaint to determine whether it is frivolous or otherwise fails to state a claim on which relief may be granted.[2] *See Atkinson v. Bohn*, 91 F.3d 1127, 1128 (8th Cir. 1996) (citing 28 U.S.C. § 1915(e)(2)(B)(ii)) ("[A] district court may dismiss an action filed in forma pauperis 'at any time' if the court determines that the action fails to state a claim on which relief may be granted."). Further, under 28 U.S.C. § 1915A(a)–(b), the Court must review Traylor's complaint to "identify cognizable claims," and dismiss those portions of a complaint that, as relevant here, "fail[] to state a claim upon which relief may be granted" or seek monetary relief from immune defendants.

In reviewing whether a complaint states a claim on which relief may be granted, the Court must accept as true all the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See Ingram v. Ark. Dep't of Corr.*, 91 F.4th 924, 927 (8th Cir. 2024). The factual allegations in the complaint need not be detailed, but they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In assessing the sufficiency of the complaint, the

---

[2] Of course, Magistrate Judge Docherty did not review Traylor's case on the merits given Traylor's failure to pay the initial partial filing fee after having been warned that failing to do so would lead to a recommendation to dismiss the action without prejudice for failure to prosecute. ECF No. 4 at 1. Without having had the benefit of Traylor's subsequently filed objection, ECF No. 5, this Court is simply going to vacate the R&R rather than decline to follow it and instead address the merits of Traylor's Complaint.

court may disregard legal conclusions that are couched as factual allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Finally, although *pro se* complaints are to be construed liberally, they still must allege sufficient facts to support the proposed claims, and the Court cannot "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint." *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004).

Furthermore, under Federal Rule of Civil Procedure 12(h)(3), if the Court "determines at any time that it lacks subject-matter jurisdiction," then "the court must dismiss the action." Although this language refers to "actions," courts in this District routinely apply Rule 12(h)(3) to dismiss parts of actions over which a court lacks jurisdiction. *See, e.g.*, *Bartz v. Fed. Bureau of Investigation*, No. 19-cv-1577 (NEB/BRT), 2019 WL 5269075, at *2 n.7 (D. Minn. Sept. 11, 2019) (citing cases), *report and recommendation adopted*, 2019 WL 5381966 (D. Minn. Oct. 17, 2019).

Construed liberally, Traylor asserts two claims. First, he argues that certain grievance procedures and limitations at MCF-Stillwater violated his due-process rights. Second, he claims that MCF-Stillwater staff retaliated against him for exercising his First Amendment rights.

### A.     Jurisdictional Issues

Under the Eleventh Amendment, states possess sovereign immunity from suit in federal court unless they have consented to be sued, or Congress has abrogated their immunity. *See, e.g.*, *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 669–70 (1999) (citing cases). State sovereign immunity also protects state

5

agencies. *See, e.g.*, *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993); *Monroe v. Ark. State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007) (citing cases). Here, Traylor's complaint names a state agency: MNDOC. ECF No. 1 at 2. Nothing in the complaint suggests that the State of Minnesota consented to a suit like this one, or that Congress enacted any relevant abrogation of state sovereign immunity. The Court therefore dismisses Traylor's complaint to the extent it brings claims against MNDOC.

### B. Due-Process Claim

As to the substance of Traylor's claims, he first asserts that certain disciplinary hearings lacked necessary procedural protections, in violation of the Due Process Clause, and that he was given additional time in segregated custody after those hearings. ECF No. 1 at 3.

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). But, although prisoners do have limited Fourteenth Amendment due-process rights, not every change in confinement triggers those protections. *See Sandin v. Conner*, 515 U.S. 472, 483–84 (1995). More specifically, due process safeguards arise only when the discipline would "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484; *see also Spann v. Lombardi*, 65 F.4th 987, 991–92 (8th Cir. 2023). And it is well established that merely placing a prisoner in segregated status does not automatically impose an "atypical and significant hardship" on him "in relation to the ordinary incidents of prison life." *See, e.g.*, *Smith v.*

6

*McKinney*, 954 F.3d 1075, 1082 (8th Cir. 2020); *see also Wycoff v. Nichols*, 94 F.3d 1187, 1190 (8th Cir. 1996) ("*Sandin* teaches that [an inmate] has no due process claim based on [a] somewhat more restrictive confinement because he has no protected liberty interest in remaining in the general prison population; his only liberty interest is in not being subjected to 'atypical' conditions of confinement."). "As a result, 'to assert a liberty interest,' the inmate 'must show some difference between his new conditions in segregation and the conditions in the general population which amounts to an atypical and significant hardship.'" *Smith*, 954 F.3d at 1082 (quoting *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003)).

Traylor has alleged no facts about his segregated status, let alone that the segregated status amounts to atypical or significant hardship. Thus, he has not established a liberty interest and, as a result, has failed to adequately plead that his due process rights were violated by the grievance procedure.

Traylor also argues that he is entitled to file unlimited grievances, and that the prison's general policy to limit inmates to the filing of four grievances per month is therefore unconstitutional. ECF No. 1 at 2, 5. But "the Constitution does not obligate the state to establish a grievance procedure." *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989); *see also Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) ("There is no legitimate claim of entitlement to a grievance procedure."); *Bingham v. Thomas*, 654 F.3d 1171, 1177–78 (11th Cir. 2011) ("Because we agree with our sister circuits that a prison grievance procedure does not provide an inmate with a constitutionally protected interest," the district court did not err "in dismissing [plaintiff's] claim that the prison's grievance

7

procedures were inadequate."). It follows, then, that a prison is under no obligation to allow *unlimited* grievances. *Klingensmith v. Deboer*, No. 6:19-CV-06126, 2021 WL 1899361, at *8 (W.D. Ark. Jan. 15, 2021), *report and recommendation adopted as modified*, No. 6:19-CV-06126, 2021 WL 1713332 (W.D. Ark. Apr. 30, 2021) ("Prisoners have no constitutional right to a grievance process, much less any right to an unlimited grievance process."). Indeed, "prisoners must understand that if they abuse the system by repeatedly filing ill-founded grievances, reasonable limitations may be placed on their access to the procedure, just as reasonable limitations may be placed on prisoners' access to the courts when they abuse the judicial process by repeatedly filing frivolous claims." *Sprouse*, 870 F.2d at 452; *see also Knippling v. Robbins*, No. 3:15-cv-5829-RJB-JRC, 2017 WL 979076, at *5 (W.D. Wash. Feb. 17, 2017), *report and recommendation adopted*, No. 15-5829 RJB, 2017 WL 959610 (W.D. Wash. Mar. 13, 2017) ("[T]he Court finds that the practice of limiting prisoners to five open grievances at a time is reasonably related to the legitimate governmental objective of efficiently processing grievances."). The Court accordingly dismisses Traylor's due process claims.

    **C.**    **First Amendment Retaliation Claim**

Traylor also alleges that the prison retaliated against him for filing grievances, in violation of his First Amendment right to freedom of speech. ECF No. 1 at 3. "[A]s a general matter, the First Amendment prohibits government officials from subjecting individuals to retaliatory actions after the fact for having engaged in protected speech." *Aldridge v. City of St. Louis*, 75 F.4th 895, 898 (8th Cir. 2023) (internal quotations omitted). The elements of a First Amendment retaliation claim are: "(1) the plaintiff engaged in

8

protected activity, (2) the government took adverse action against the plaintiff that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Wolk v. City of Brooklyn Ctr.*, 107 F.4th 854, 859–60 (8th Cir. 2024) (citing *Green v. City of St. Louis*, 52 F.4th 734, 739 (8th Cir. 2022)).

Here, Traylor meets the first two elements. First, he engaged in protected activity because, as the Eighth Circuit has held, "'[t]he filing of a prison grievance, like the filing of an inmate lawsuit, is protected First Amendment activity.'" *Gonzalez v. Bendt*, 971 F.3d 742, 744–45 (8th Cir. 2020) (alteration in original) (quoting *Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007)). Thus, if the prison provides a grievance procedure, the prison is not allowed to retaliate against an inmate for making use of it, and "actions taken in retaliation for an inmate's filing of a grievance are actionable under 42 U.S.C. § 1983." *Nelson v. Shuffman*, 603 F.3d 439, 450 (8th Cir. 2010). Traylor alleges that he has filed multiple grievances. ECF No. 1 at 2–4. Thus, he has alleged a protected activity.

Second, he alleges that, due to his grievance filings, the prison placed him on "grievance management" and "discipline status," and that he was given forty-five days of segregation on fabricated charges. *Id.* These adverse actions, if true, are sufficient at this early stage, as even "the filing of a disciplinary action against an inmate, if done in retaliation for the inmate's use of the grievance procedure against prison staff, is allegation sufficient to survive dismissal at the pleading stage." *Williams v. Horner*, 403 F. App'x 138, 140 (8th Cir. 2010); *see also Blackmon v. Lombardi*, 527 F. App'x 583, 584 (8th Cir. 2013) (allegation that correctional officer "threatened to place [a prisoner] in segregation

9

if he filed more grievances" was sufficient, at pleading stage, to plead adverse action element).

Traylor fails, however, to sufficiently plead the third element. To show that an adverse action stemmed from the plaintiff's protected activity, the plaintiff must allege facts showing a causal link connecting the plaintiff's conduct and the defendant's response. *See, e.g.*, *Poemoceah v. Morton Cnty.*, 117 F.4th 1049, 1056 (8th Cir. 2024) (citing *Baribeau v. City of Minneapolis*, 596 F.3d 465, 481 (8th Cir. 2010)). A plaintiff can do this with direct evidence, such as explicit statements, or circumstantial evidence, such as suspicious timing. *See, e.g.*, *Wagner v. Scheirer*, 712 F. Supp. 3d 1211, 1226–27 (D. Minn. 2024) (considering arguments based on allegations of direct and indirect evidence). Ultimately, the plaintiff must allege more than mere speculation. *See Atkinson v. Bohn*, 91 F.3d 1127, 1129 (8th Cir. 1996).

Here, Traylor provides neither direct evidence *nor* circumstantial evidence linking his grievances to any adverse action. For instance, a prisoner might plead that prison staff explicitly told him that he was being punished for filing grievances. *See Santiago v. Blair*, 707 F.3d 984, 994 (8th Cir. 2013) (official told prisoner that "[u]ntil you learn how to act, you're not going to get any of those things"); *Spencer v. Jackson Cnty.*, 738 F.3d 907, 913 (8th Cir. 2013) (official told prisoner that he would be transferred and not receive additional grievance forms). Or a prisoner could plead that staff threatened him in an effort to stop the filing of grievances. *See Santiago*, 707 F.3d at 993 (prison official issued death threat to prisoner unless prisoner dropped his grievance). Traylor here alleges no such direct evidence that prison staff retaliated against him for his grievances.

Nevertheless, a plaintiff may also show causation with circumstantial evidence, such as a temporal proximity between the filing of grievances and the alleged adverse action. *See, e.g.*, *Nelson*, 603 F.3d at 450 (prisoner was transferred the same day he filed a grievance); *Peterson v. Kopp*, 754 F.3d 594, 602–03 (8th Cir. 2014) (discipline occurred moments after the protected speech). But here, Traylor provides no relevant dates. He claims he was placed on grievance management on August 12, 2024; that he will be on grievance management until February 14, 2025; and that on September 13, 2024, he was formally disciplined on charges that he interfered with security, abused or harassed someone, and disobeyed direct orders. ECF No. 1 at 2–3. But he does not allege when he filed grievances, simply stating that he files often and, at one point, filed more than four in a month. *See id.* His lack of a precise timeline, absent some additional facts supporting the causal connection, "is too remote to support an inference of retaliation." *Wagner*, 712 F. Supp. 3d at 1228.

Instead of providing direct or indirect evidence, Traylor relies entirely on his personal belief that the adverse actions he encountered were motivated by his filing of grievances. *See* ECF No. 1 at 2–4. But these allegations are speculative and conclusory, and without more are insufficient to allege a causal connection between his grievances and the adverse actions. *See Atkinson*, 91 F.3d at 1129. This is particularly true where the alleged disciplinary proceedings were conducted for violations that, if proven, were an "actual violation of a prison rule." *Santiago*, 707 F.3d at 993 (quoting *Hartsfield v. Nichols*, 511 F.3d 826, 829 (8th Cir. 2008)). Simply put, Traylor may feel that he is being

disciplined for filing grievances, but he has not alleged any facts to support that suspicion. The Court therefore dismisses Traylor's First Amendment retaliation claim.

### III.   Traylor's Filing-Fee Obligations

The Court notes that, to date, Traylor has filed at least ten civil actions in this District (including this one), as well as a notice of appeal after a court dismissed one of these actions.[3] Traylor has therefore incurred $4,005 in mandatory filing fees ($350 for each new civil action and $505 for each notice of appeal). Traylor has paid $396.85 of that $4,005, leaving $3,608.15 unpaid.

Under 28 U.S.C. § 1915(b)(2), "[a]fter payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." These monthly installments apply per case—in other words, Traylor owes 20 percent of the preceding month's income to *each* of his previously initiated civil actions if his prison trust account's balance exceeds $10.00. *See id.*; *Bruce v. Samuels*, 577 U.S. 82, 85–86 (2016). This remains true even if, as in

---

[3] Traylor has filed the following civil actions and appeals: *Traylor v. Hennepin Cnty. Adult Detention Ctr.*, No. 15-cv-2816 (JNE/TNL) (case filed; $0 of $350 paid); *Traylor v. Rainbow Taxi*, No. 15-cv-3203 (SRN/JSM) (case filed; $0 of $350 paid); *Traylor v. Hill*, No. 16-cv-2708 (JNE/TNL) (case and appeal filed; $350 of $855 paid); *Traylor v. Probation Servs. Sath*, No. 17-cv-4722 (WMW/KMM) (case filed; $0 of $350 paid); *Traylor v. Hennepin Cnty. Sheriff's Office*, No. 22-cv-2788 (JRT/JFD) (case filed; $0 of $350 paid); *Traylor v. Buck*, No. 24-cv-0057 (NEB/LIB) (case filed; $39.50 of $350 paid); *Traylor v. Minn. Dep't of Corr.*, No. 24-cv-1275 (JWB/SGE) (case filed; $7.35 of $350 paid); *Traylor v. Gary*, No. 24-cv-3758 (LMP/JFD) (case filed; $0 of $350 paid); *Traylor v. White*, No. 24-cv-4150 (PAM/JFD) (case filed; $0 of $350 paid); and *Traylor v. Jones*, No. 24-cv-4225 (PJS/ECW) (case filed; $0 of $350 paid).

Traylor's case, a prisoner initiates five or more proceedings and depletes his entire prison trust account monthly. *See Bruce*, 577 U.S. at 89–90.

The IFP Application shows Traylor's noncompliance with Section 1915(b)(2). The balance of his prison trust account has averaged $19.26 over the past six months—and the monthly deposits during that period have averaged $48.56. *See* ECF No. 2 at 6. For any given month, if the balance of Traylor's trust account would otherwise exceed $10.00, he must pay 20 percent of that month's income toward each owed filing fee until he pays the fees in full. *See* 28 U.S.C. § 1915(b)(2). This obligation is mandatory. *Id.*

The Clerk of Court is therefore directed to give notice of Traylor's remaining financial obligation—i.e., the $3,608.15 he owes (as of the date of this Order) to this Court and the United States Court of Appeals for the Eighth Circuit—to the officials at MCF-Stillwater, where Traylor is presently incarcerated. These officials are authorized by statute to forward payments from Traylor's trust account equal to 20 percent of his preceding month's income toward each of the eleven actions and appeals if his account balance would otherwise exceed $10.00 were the payments not forwarded. *See* 28 U.S.C. § 1915(b)(2).

Unless Traylor expressly directs otherwise, the Clerk of Court shall apply each payment to his unpaid filing fees beginning with the earliest due and, when that one is satisfied, proceeding chronologically, until each is fully satisfied. The Clerk of Court shall also notify both Traylor and prison officials each time Traylor fully satisfies a filing-fee obligation of (1) the number of obligations remaining, and (2) the total amount owed toward those obligations. Although prison officials may transmit funds from Traylor's

account on their own initiative, Traylor has an independent obligation to pay fees that he owes, even if prison authorities do not forward payments under Section 1915(b).

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Traylor's objection to the R&R (ECF No. 5) is **GRANTED**;

2. The R&R (ECF No. 4) is **VACATED**;

3. Traylor's Complaint (ECF No. 1), is **DISMISSED WITHOUT PREJUDICE**;

4. Traylor's Application to Proceed in District Court Without Prepaying Fees or Costs (ECF No. 2) is **DENIED AS MOOT**;

5. The Clerk of Court is directed to provide notice to the authorities at MCF-Stillwater of Plaintiff Rayco Traylor's remaining financial obligations to this Court and the Eighth Circuit Court of Appeals ($3,608.15); and

6. The Clerk of Court is further directed to serve one copy of this order upon the authorities at MCF-Stillwater, the Minnesota Attorney General's Office, and the Minnesota Department of Corrections.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: January 23, 2025

*s/Laura M. Provinzino*
Laura M. Provinzino
United States District Judge